RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney
General

JEREMY N. HENDON
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044-0683
Telephone: (202) 353-2466
Facsimile:  (202) 307-0054
jeremy.n.hendon@usdoj.gov
Western.TaxCivil@usdoj.gov

BLAINE WELSH
Civil Chief
United States Attorney's Office
District of Nevada
*Of Counsel*

*Attorneys for the United States of America*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>M. DAVID FESKO,<br><br>    Defendant. | Case No.<br><br>**COMPLAINT TO REDUCE CIVIL PENALTY ASSESSMENTS TO JUDGMENT** |

    Plaintiff, the United States of America ("United States"), brings this action to reduce certain unpaid civil federal penalty assessments to judgment.  In support of this action, the United States alleges as follows:

## INTRODUCTION

1. This is a timely civil action brought by the United States to reduce to judgment outstanding unpaid civil penalty assessments (31 U.S.C. § 5321(a)(5)), commonly known as FBAR penalties, made against defendant M. David Fesko. The Internal Revenue Service ("IRS") assessed FBAR penalties against M. David Fesko for his willful failure to report his interest in several foreign bank accounts, as required by 31 U.S.C. § 5314 and the implementing regulations promulgated thereunder.

2. The United States brings this action with the authorization of the Secretary of the Treasury (*see* 31 U.S.C. § 3711(g)(4)(C)) and at the direction of the Attorney General of the United States.

## DEFENDANT

3. Defendant M. David Fesko ("Defendant") is a United States citizen who currently resides in Las Vegas, Nevada.

## JURISDICTION AND VENUE

4. Jurisdiction over this action is conferred upon this district court by 28 U.S.C. §§ 1331, 1345 and 1355.

5. Venue properly lies in the District of Nevada under 28 U.S.C. § 1391(b)(1) because Defendant resides within this judicial district.

18368654.1

## REQUIREMENT TO FILE FBARs

6. 31 U.S.C. § 5314 authorizes the Secretary of the Treasury to require United States persons to report certain transactions with foreign financial agencies. Under the statute's implementing regulations, "[e]ach United States person having a financial interest in, or signature authority over, a bank, securities, or other financial account in a foreign country shall report such relationship to the [IRS] for each year in which such relationship exists." 31 C.F.R. § 1010.350(a).

7. To fulfill this requirement during calendar years 2008–2012, a person was required to file a Form TD F 90-22.1, "Report of Foreign Bank and Financial Accounts," commonly known as an "FBAR." For these calendar years, the FBAR report was due by June 30 following the calendar year reported for all foreign financial accounts exceeding $10,000. 31 C.F.R. § 1010.306(c).

8. 31 U.S.C. § 5321(a)(5) provides for the imposition of civil penalties for failure to comply with the reporting requirements of 31 U.S.C. § 5314.

9. Defendant had a financial interest in the following foreign bank accounts during at least years 2008 through 2012:

   a. Atlantic Bank in Belize with account numbers ending 0856, 0082, 0055, and 0160;

   b. Butterfield Bank in the Bahamas, with sub account numbers ending E93, O93, 1J1, 3501, 4465, and EVERCLEAR01;

   c. Financial Pacific in Panama with account number ending 0440; and

   d. Thales (aka Panama Wall Street S.A.) in Panama with account ending 3301.

18368654.1

These accounts when discussed together will be collectively referred to as "FBAR Accounts."

10. For each of the years 2008 through 2012, the amount in the FBAR Accounts exceeded $10,000 in U.S. currency at any time during each year.

11. Defendant was required by law to timely file FBARs reporting his financial interest in the FBAR Accounts for the years 2008 through 2012, as well as any other year that satisfied the FBAR reporting requirements.

12. Defendant filed an incomplete FBAR with regard to the 2011 year by not identifying the correct listed names on the accounts or correct addresses of the accountholders, not including the maximum value of the accounts during 2011, and not including the correct account numbers. Defendant also failed to file any FBAR at all with regard to the 2008 through 2010 and 2012 years, by the applicable deadline, as required by 31 U.S.C. § 5314 and 31 C.F.R. § 1010.306(c).

## WILLFUL FAILURE TO FILE FBARs

*Defendant's Business Experience*

13. Defendant is a United States citizen who has acquired extensive business experience throughout his life.

14. Defendant worked with the State of Indiana Secretary of State's office in implementing Indiana's franchise disclosure law.

15. Defendant owned and developed commercial real estate, including an urban redevelopment. Defendant founded Sunshine Ice Cream Company and operated Orange Julius franchises.

16. Defendant managed, prepared tax returns for, transferred assets to and from, and signed and filed tax returns for many of his entities.

18368654.1

17. In addition, Defendant has created and managed multiple foreign and domestic entities, which he then used to open foreign and domestic accounts, earn foreign and domestic income, and own assets. Defendant also organized some of his businesses as being tiered where one of his domestic companies is partially owned by a separate foreign corporation that Defendant fully owned and controlled. This is done to hide assets held in foreign entities and foreign accounts.

18. One example of such a domestic entity is Future Carz, Inc. ("Future Carz"). Defendant registered, prepared, and submitted filings for Future Carz with the United States Securities and Exchange Commission.

19. Defendant served as the Chairman of the Board, Chief Executive Officer, Chief Financial Officer, and Treasurer of Future Carz.

***Defendant's Foreign Entities And Bank Accounts***

20. Defendant established a foreign company known as Ramjax Corporation ("Ramjax") in Belize which Defendant 100% owned and controlled. At some point prior to 2005, Defendant opened bank accounts, account numbers ending 0856, 0082, 0055, and 0160, at Atlantic Bank in Belize in the name of Ramjax. Defendant maintained 100% control over these accounts.

21. At least as of December 31, 2003, Ramjax owned 23% of the stock of Future Carz, Defendant directly owned 38% of the stock of Future Carz, and Defendant's other domestic trusts owned the remainder of the stock of Future Carz. By keeping Ramjax's ownership of Future Carz's stock to under 25%, Defendant avoided the requirement of 26 U.S.C. § 6038A to file IRS Form 5472 to report foreign ownership in a domestic company.

22. Ramjax had earnings and profits each year from 2006 through 2012.

18368654.1

23. In March 2006, Defendant traveled to the Bahamas and created an entity called Everclear Fund Incorporated ("Everclear") and assigned 100% of Everclear's stock to a different Nevada corporation he owned called Hoosier State Building & Loan LLC. While in the Bahamas, Defendant opened the account at Butterfield Bank (with sub account numbers ending E93, O93, 1J1, 3501, 4465, and EVERCLEAR01) under the name "Everclear Fund Incorporated," but still maintained 100% control of this account, as well as over Everclear.

24. Everclear had earnings and profits each year from 2007 through 2009.

25. Defendant also set up a foreign foundation in Panama in the name of Fundacion Mosaico Misionero ("Fundacion Mosaico") in or around October 2009. Defendant had exclusive use and control over Fundacion Mosaico. As with his other foreign entities, Defendant opened bank accounts in the foreign country but maintained 100% control over the account. For Fundacion Mosaico, Defendant opened the accounts at Financial Pacific, account number ending 0440, and Thales (aka Panama Wall Street S.A.), account number ending 3301, under the name "Fundacion Mosaico Misionero."

***Defendant's Involvement With Trusts***

26. In addition to these domestic and foreign entities and bank accounts, Defendant was involved with several domestic trusts. Defendant is the beneficiary of the Helen Fesko Revocable Trust. Defendant's son, John Fesko, is the Trustee of the H.F. Trust.

27. Defendant is the creator and Trustee of the M David Fesko Revocable Trust dated April 8, 2009 ("D.F. Trust").

28. Defendant is the creator and Trustee of the M David Fesko Exempt TR UTO Helen Fesko trust.

18368654.1

29. Defendant is the creator and Trustee of The Fesko Family Legacy Trust created in December 2012 ("Fesko Legacy Trust").

***Defendant's Untruthfulness To The IRS***

30. In 2007, the IRS opened an examination regarding Defendant's 2004 and 2005 federal income tax returns (Form 1040). During the examination, Revenue Agent Marisol Edmond asked Defendant to identify and produce bank statements for all of his personal or business accounts. Defendant responded that he only had one domestic bank account. Defendant knew he had other bank accounts but was not truthful in his response. In addition, as part of her examination, Revenue Agent Marisol asked Defendant if he had any foreign income, investments, or transactions and Defendant responded no. Again, Defendant knew he had foreign transactions and income but was not truthful in his response.

31. Even after the 2007 examination, Defendant continued to fail to report his foreign transactions on forms with the IRS, as well as reporting any foreign income he earned on his Form 1040 or filing FBARs with respect to his foreign financial accounts.

32. On or about February 26, 2008, Defendant submitted an offer in compromise ("OIC") to the IRS on behalf of Future Carz to settle Future Carz's tax liability at that time for only $2,800 based on an inability to pay the liability. The IRS rejected the OIC because it determined that Future Carz owned assets worth a considerably higher amount. Defendant appealed the rejection to the IRS Office of Appeals who, in August 2009, accepted an amended offer of $26,600 from Defendant that was to be paid by November 2012 based on Defendant's representations of Future Carz's inability to pay. However, just one-and-one-half months later in October 2009, Defendant transferred $116,000 as a corporate dividend from the Butterfield Bank account in the Bahamas into a domestic bank account at Bank One in the name of Future Carz.

7

During the time Defendant submitted the OIC, there was approximately $3 million USD in the Butterfield Bank account. In March 2010, the amended offer amount was paid in full and the federal tax liens against Future Carz were released.

***Defendant's Quiet Disclosure To The IRS***

33. On or about October 18, 2011, Defendant filed his 2010 Form 1040 with the IRS. This is the first time Defendant disclosed interest he earned from his foreign entities and accounts to the IRS on any document.

34. On or about December 27, 2011, Defendant filed amended Forms 1040 for the 2008 and 2009 tax years. In these amended returns, Defendant reported previously unreported interest he earned from the Atlantic Bank and Butterfield Bank accounts (that are part of the basis for the FBAR assessment), as well as term deposit assets and income from foreign stock sales. On or about January 3, 2012, Defendant filed an amended Form 1040 for the 2007 tax year reporting similar information for the first time as he reported for the first time with respect to the 2008 and 2009 tax years just five days earlier.

***Defendant's Failure To File FBARs***

35. Although Defendant prepared and filed many returns with the IRS regarding his domestic corporations and trusts over the years, he failed to file any returns or other filing requirements with the IRS regarding his foreign entities or to report his foreign income until his quiet disclosure. For example, although Defendant was aware that he owned and controlled several foreign entities and foreign financial accounts with aggregate balances over $10,000, he failed to file FBARs for 2008, 2009, and 2010.

36. By letter dated February 2, 2012, Defendant's tax return preparer, Gary Howard, informed Defendant that he must file FBARs to report his interest in his foreign financial

18368654.1

accounts. Mr. Howard's February 2, 2012 letter specifically identifies Defendant's accounts at Atlantic Bank, Financial Pacific, and Thales that needed to be reported on a FBAR, that Defendant must include the maximum balances of these accounts during the year, and that the FBAR was due June 30, 2012.

37. On or about June 30, 2012, Defendant filed a FBAR for 2011. This filing was not accurate or complete as it failed to include certain required information. First, Defendant was required to include the name, address, and Taxpayer Identification Number, if applicable, of the owner by name of the foreign account as shown on the books of the foreign institution. Instead, Defendant included his name as the owner of the accounts that he reported (rather than Fundacion Mosaico and Ramjax) and included his domestic address rather than the foreign addresses. Second, Defendant did not include any value of the accounts during the year. Third, Defendant improperly listed the account numbers by simply stating "NAMESS" instead of the true account numbers. Defendant has not filed an amended or separate FBAR for 2011 to correct these errors and include all required information.

38. Defendant has never filed a FBAR for 2012 even though he still held a financial interest in accounts in a foreign country that exceeded $10,000 during 2012.

***Defendant's Attempts To Conceal Funds***

39. In or around October 2009, Defendant opened the account at Financial Pacific, account number ending 0440, and the Thales account, account number ending 3301, under the name "Fundacion Mosaico Misionero." Defendant then transferred approximately $2 million USD into these accounts from his Butterfield Bank account in the Bahamas (that is part of the basis for the FBAR assessment) after being informed that Butterfield Bank was going to close all American citizens' accounts.

40. Sometime between October 31, 2009 and February 1, 2011, Defendant used funds from the Financial Pacific account, account number ending 0440, to invest $50,000 in AMC Bernstein securities and $100,000 in Franklin Templeton Securities in the name of Fundacion Mosaico.

41. On or about April 8, 2009, Defendant created the J.F. Trust. The J.F. Trust was originally created for the purpose of repatriating offshore funds held by Defendant's offshore foreign entities in offshore bank accounts.

42. The J.F. Trust has a domestic account at Charles Schwab & Co., Inc. ("Charles Schwab") as well as a domestic bank account at Nevada State Bank.

43. On or about August 31, 2010, J.F. Trust's Charles Schwab account received a deposit from funds sent from Defendant's Thales account in Panama totaling approximately $1.3 million USD.

44. Between September 28, 2010 and February 8, 2011, Defendant authorized five withdrawals from J.T. Trust's Charles Schwabe account totaling $1,183,293.48, that include transfers to J.T. Trust's Nevada State Bank account and to accounts for two additional domestic trusts that were created for the benefit of Defendant.

45. On June 29, 2011, J.F. Trust's Charles Schwab account received a deposit from funds wired from Defendant's Atlantic Bank accounts in Belize totaling approximately $1.5 million USD.

46. On or about June 24, 2011, Defendant, on behalf of Fundacion Mosaico, sent a letter to Jonathan Binder, VP of Financial Pacific in Panama. In this letter, Defendant instructs Financial Pacific to: (1) close out the bank account, account number ending 0440, in the name of Fundacion Mosaico Misionero; and (2) send the funds in that account via wire transfer to a

domestic United States account at Charles Schwabe which is further credited to the D.F. Trust. On July 6, 2011, J.F. Trust's Charles Schwab account received a deposit from funds sent from Defendant's Financial Pacific account in Panama totaling approximately $551,000 USD.

47. On or about November 30, 2012, J.F. Trust's Charles Schwab account received another deposit from funds wired from Defendant's Atlantic Bank accounts in Belize totaling approximately $2 million USD.

48. None of the repatriated funds discussed in paragraphs 43 and 45047, above, were reported or disclosed to the IRS.

49. In or around December 2012, Defendant created the Fesko Legacy Trust. During December 2012, Defendant transferred approximately $3.1 million USD from the D.F. Trust to the Fesko Legacy Trust.

**CLAIM FOR RELIEF: JUDGMENT FOR CIVIL PENALTIES
UNDER 31 U.S.C. § 5321(a)(5)**

*Liability for civil penalties*

50. During the years 2008–2012, Defendant was a United States person within the meaning of 31 C.F.R. § 1010.350(b).

51. During the years 2008–2012, Defendant had a financial interest, within the meaning of 31 C.F.R. § 1010.350(e), over the FBAR Accounts in Belize, the Bahamas, and Panama.

52. The FBAR Accounts were bank accounts in a foreign country.

53. During the years 2008–2012, the balance of the FBAR Accounts exceeded $10,000.

54. Defendant failed to file a FBAR correctly identifying the correct accountholders, the correct address of the accountholders, the maximum value of the accounts, and the account

18368654.1

numbers for the Atlantic Bank and Financial Pacific accounts with regard to the 2011 year, and failed to file any FBAR at all with regard to the 2008 through 2010 and 2012 years, by the applicable deadline, as required by 31 U.S.C. § 5314 and 31 C.F.R. § 1010.306(c).

55. The failure of Defendant to timely file, and/or properly identify and disclose all of the foreign accounts in which he held a financial interest and other required information, in FBARs with regard to the 2008 through 2012 calendar years was willful within the meaning of 31 U.S.C. § 5321(a)(5). (a)(5).

*Assessment and collection of the civil penalties*

56. On or about February 21, 2018, a delegate of the Secretary of the Treasury timely assessed civil penalties against Defendant M. David Fesko in the total amount of $2,708,071.32 due to his willful failure to timely file FBARs and disclose the FBAR Accounts to the IRS for the calendar years 2008–2012 ("FBAR Penalties").

57. On or about February 27, 2018, a delegate of the Secretary of Treasury sent a notice of the assessments and demand for payment to Defendant for the FBAR Penalties at his last known address.

58. In addition to the FBAR Penalties, Defendant owes late-payment penalties pursuant to 31 U.S.C. § 3717(e)(2), and interest pursuant to 31 U.S.C. § 3717(a), and applicable collection related fees pursuant to 31 U.S.C. § 3717(e)(1).

59. As of January 6, 2020, the unpaid balance owed to the United States by Defendant for the FBAR penalties, the late payment penalty, applicable fees and interest, less any payments, was $3,062,060.02.

18368654.1

60. The United States is entitled to a judgment against Defendant in the amount of $3,062,060.02 as of January 6, 2020, plus statutory accruals as provided by law from that date until fully paid.

WHEREFORE, the United States requests that the Court:

A. Enter judgment in favor of the United States of America and against M. David Fesko, in the amount of $3,062,060.02 as of January 6, 2020, plus statutory accruals from that date until fully paid; and

B. Award the United States of America its costs, and such other further relief as the Court deems just and proper.

Dated: February 21, 2020

Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Jeremy N. Hendon*
JEREMY N. HENDON
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044-0683
Telephone: (202) 353-2466
Facsimile: (202) 307-0054
jeremy.n.hendon@usdoj.gov
Western.TaxCivil@usdoj.gov

BLAINE WELSH
Civil Chief
United States Attorney's Office
District of Nevada
*Of Counsel*

*Attorneys for the United States of America*

18368654.1